**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DMR CONSTRUCTION SERVICES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>TRIMBLE INC.,<br><br>Defendant. | CIVIL ACTION NO.: |

**NOTICE OF REMOVAL**

PLEASE TAKE NOTICE that Defendant Trimble Inc. ("Defendant" or "Trimble"), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, and with full reservation of all defenses, by its undersigned attorneys, Greenberg Traurig, LLP, submits this Notice of Removal to this Court, removing the above-captioned action from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. BER-L-7357-26, in which the state action described below is now pending, but which is within the original jurisdiction of this Court. In support of removal to this Court, Defendant alleges as follows:

**PROCEDURAL HISTORY AND TIMELINESS OF REMOVAL**

1. Pursuant to Rule 10.1(a) of the Local Civil Rules, the addresses of the named parties are as follows:

a. Upon information and belief, Plaintiff DMR Construction Services, Inc. ("Plaintiff" or "DMR") is a corporation organized under the laws of the State of New Jersey with its principal place of business at 160 Hopper Avenue, Waldwick, Bergen County, New Jersey. Plaintiff is represented by Lynch Law Firm, P.C., Joseph M. Cerra, Esq., 440

State Route 17 North, 3rd Floor, Hasbrouck Heights, New Jersey 07604.

b. Defendant Trimble Inc. is a corporation incorporated under the laws of the State of Delaware with its principal place of business at 10368 Westmoor Drive, Westminster, Colorado. Trimble is represented by Greenberg Traurig, LLP, 500 Campus Drive, Suite 400, Florham Park, New Jersey 07932.

2. Plaintiff commenced this action on July 31, 2026, by filing a Complaint ("Complaint") in the Superior Court of New Jersey, Law Division, Bergen County, captioned as *DMR Construction Services, Inc. v. Trimble Inc.*, Docket No. BER-L-7357-26. A true and correct copy of the Complaint is attached as **Exhibit A**.

3. The Complaint asserts various tort, statutory, contract, and quasi-contract causes of action against Defendant, stemming from a software service agreement entered into between the parties. Plaintiff seeks rescission of the contract and restitution of all amounts paid to Defendant, as well as compensatory damages, consequential and incidental damages, treble damages under the New Jersey Consumer Fraud Act, punitive damages, interest, and attorneys' fees and costs. *See* Compl., Ex. A ¶¶ 55-98.

4. On August 13, 2026, Plaintiff effected service of the Summons and Complaint on Trimble through service of process on Trimble's registered agent. A true and correct copy of all process, pleadings, and orders served upon Defendant in the state court action, as well as the Service of Process Transmittal Summary, are attached hereto as **Exhibit B**.

5. Thirty days have thus not yet elapsed from service of process on Defendant. This Notice of Removal is therefore timely pursuant to 28 U.S.C. § 1446(b).

6. The Superior Court of New Jersey, Bergen County is located within this judicial district. 28 U.S.C. § 110. This Notice of Removal is therefore properly filed in this Court pursuant

to 28 U.S.C. § 1441(a).

7. No proceedings have been held in the Superior Court of New Jersey, Bergen County since Plaintiff filed its Complaint. The documents attached hereto as Exhibit B constitute the entirety of the process, pleadings, and orders that Defendant has received in this case to date. *See* 28 U.S.C. § 1446(a).

**GROUNDS FOR REMOVAL**

8. Section 1441(a) of Title 28 of the United States Code provides in relevant part that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

9. Federal district courts have original jurisdiction over all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States. *See* 28 U.S.C. § 1332(a).

10. Defendant may remove this case to this Court in accordance with 28 U.S.C. §§ 1332 and 1441 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this is an action between citizens of different States. *See* 28 U.S.C. § 1332(a).

**Amount in Controversy**

11. The required amount in controversy under 28 U.S.C. § 1332(a), $75,000, is satisfied as set forth below.

12. In its Complaint, Plaintiff seeks monetary and equitable relief arising from Plaintiff's purchase of Defendant's ProjectSight, Spectrum, and AppXchange software platforms and related implementation and consulting services, and Defendant's alleged failure to deliver the

integrated functionality Plaintiff claims it represented. *See* Compl., Ex. A ¶¶ 5–45.

13. Plaintiff seeks, *inter alia*, restitution of all amounts it paid to Defendant, as well as consequential and incidental damages, treble damages under the New Jersey Consumer Fraud Act, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. *See* Compl., Ex. A, WHEREFORE clauses following the First through Ninth Counts.

14. Plaintiff alleges that the "initial contract value was $49,515," and that it also paid Defendant "additional consulting fees, subscription renewals, and other charges in connection with the engagement." Compl., Ex. A ¶ 12. Plaintiff seeks restitution of all such amounts. *See, e.g.*, ¶ 62; WHEREFORE Clause following ¶ 98.

15. As of the date of the Complaint, based upon a review of Defendant's regularly kept business records, Plaintiff has paid Defendant approximately $146,756.52. Thus, the restitution damages Plaintiff seeks, alone, readily exceed the $75,000 jurisdictional threshold.

16. Plaintiff also seeks to recover treble its losses pursuant to the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-19. *See* Compl., Ex. A ¶¶ 68–72. Trebling the total Plaintiff paid to Defendant, $146,756.52, yields $440,269.56.

17. Claims for punitive damages must also be considered in determining the amount in controversy and "will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of the plaintiff's claim is below the statutory minimum." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008). Under New Jersey law, a defendant may be liable for punitive damages up to "five times the liability of that defendant for compensatory damages or $350,000, whichever is greater." N.J.S.A. 2A:15-5.14b.

18. In addition, Plaintiff seeks to recover its attorneys' fees and costs, which may also be considered as part of the amount in controversy because such fees are available to prevailing

plaintiffs under the New Jersey Consumer Fraud Act. *See Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); N.J.S.A. 56:8-19.

19. While Trimble disputes that it is liable to Plaintiff for any amount, or that Plaintiff suffered any injury whatsoever, and while disputing Plaintiff's allegations, the matter in controversy, based on the allegations in the Complaint, exceeds the $75,000 threshold set forth in 28 U.S.C. § 1332(a).

**Citizenship**

20. The required diversity of citizenship under 28 U.S.C. § 1332(a) is satisfied because the parties are "citizens of different States." 28 U.S.C. § 1332(a)(1).

21. Under 28 U.S.C. § 1332(c)(1), a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

22. Plaintiff DMR Construction Services, Inc. is a citizen of the State of New Jersey because it is incorporated under the laws of New Jersey and has its principal place of business in Waldwick, New Jersey. *See* Compl., Ex. A ¶ 1.

23. Defendant Trimble Inc. is a citizen of the State of Delaware and the State of Colorado because it is incorporated under the laws of the State of Delaware and has its principal place of business in Westminster, Colorado. *See* Compl., Ex. A ¶ 2. Trimble is not a citizen of the State of New Jersey.

24. Accordingly, complete diversity of citizenship exists between Plaintiff and Defendant, and Defendant is not a citizen of the State in which this action was brought. *See* 28 U.S.C. §§ 1332(a), 1441(b)(2).

**ALL OTHER REMOVAL PREREQUISITES HAVE BEEN SATISFIED**

25. Trimble is the only defendant named in the Complaint, and no consent of any other defendant to removal is required.

26. Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1441(a) because the United States District Court for the District of New Jersey is the federal judicial district and division embracing the Superior Court of New Jersey, Bergen County, where Plaintiff originally filed this action, and a substantial part of the alleged events giving rise to Plaintiff's claims are alleged to have occurred in this judicial district. *See generally* Compl., Ex. A.

27. In accordance with 28 U.S.C. § 1446(d), written notice of the filing of this Notice of Removal will be given to Plaintiff, and a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of New Jersey, Bergen County, where the suit has been pending.

**RESERVATION OF RIGHTS AND DEFENSES**

28. By filing this Notice of Removal, Defendant does not waive, and expressly reserves, all defenses, objections, and motions available to it under Rule 12 of the Federal Rules of Civil Procedure and any other applicable rule or statute, and does not concede that Plaintiff has stated any claim or is entitled to any relief.

29. Defendant reserves the right to amend or supplement this Notice of Removal as necessary.

30. If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and request oral argument in support of removal.

WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, and in conformity with the requirements set forth in 28 U.S.C. § 1446, Defendant hereby removes this action from the Superior Court of New Jersey, Law Division, Bergen County, to the United States District Court

for the District of New Jersey, and respectfully requests that the Superior Court proceed no further with respect to this case.

Dated: September 10, 2026

**GREENBERG TRAURIG, LLP**

*/s/ Eric Wong*
Eric Wong
Daniel F. Carola
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
wonge@gtlaw.com
Daniel.Carola@gtlaw.com
Tel: (973) 360-7900

Daniel P. Elms (*pro hac vice* forthcoming)
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
Dan.Elms@gtlaw.com
Tel: (214) 665-3600

*Attorneys for Defendant Trimble Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date, I caused a true and correct copy of the foregoing Notice of Removal to be served on counsel to the party listed below via ECF, Email and First Class Mail:

**LYNCH LAW FIRM, P.C.**
Joseph M. Cerra, Esq.
440 State Route 17 North, 3rd Floor
Hasbrouck Heights, New Jersey 07604
(201) 288-2022
jcerra@lynchlawyers.com
*Attorneys for Plaintiff*

Dated: September 10, 2026

**GREENBERG TRAURIG, LLP**

*/s/ Eric Wong*
Eric Wong
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932
wonge@gtlaw.com
Tel: (973) 360-7900

*Attorneys for Defendant Trimble Inc.*

# EXHIBIT A

**LYNCH LAW FIRM, P.C.**
Joseph M. Cerra, Esq. (050991988)
440 State Route 17 North, 3rd Floor
Hasbrouck Heights, New Jersey 07604
(201) 288-2022
jcerra@lynchlawyers.com
*Attorneys for Plaintiff DMR Construction Services, Inc.*

| | |
|---|---|
| **DMR CONSTRUCTION SERVICES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TRIMBLE INC.,**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO. BER-L-<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff DMR Construction Services, Inc. ("DMR" or "Plaintiff"), by and through its undersigned counsel, by way of Complaint against Defendant Trimble Inc. ("Trimble" or "Defendant"), alleges as follows:

## THE PARTIES

1. Plaintiff DMR is a corporation organized under the laws of the State of New Jersey with its principal place of business at 160 Hopper Avenue, Waldwick, Bergen County, New Jersey. DMR is a general contractor performing public and private construction work in New Jersey and Florida, operating through a family of affiliated legal entities and managing numerous active construction projects at any given time.

2. Defendant Trimble is a corporation with a principal place of business at 10368 Westmoor Drive, Westminster, Colorado. Trimble develops, markets, sells, implements, and services construction technology products, including the ProjectSight construction project

management platform, the Spectrum construction accounting platform, and the AppXchange integration platform, and at all relevant times transacted business, solicited business, and derived substantial revenue from goods and services sold, implemented, and serviced within the State of New Jersey, including within Bergen County.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over Trimble because Trimble purposefully directed its sales, implementation, training, support, and servicing activities at DMR in New Jersey; contracted to supply goods and services in New Jersey; and committed the acts and omissions alleged herein, including the fraudulent conduct alleged herein, in substantial part in New Jersey.

4. Venue is proper in Bergen County pursuant to R. 4:3-2 because the causes of action arose in Bergen County, where DMR maintains its principal place of business, where Trimble's fraudulent representations were received and relied upon, and where the harm alleged herein was suffered.

## FACTS COMMON TO ALL COUNTS

### A. DMR's Requirements and Trimble's Fraudulent Inducing Representations

5. Prior to the transaction at issue, DMR managed its construction operations using Procore construction management software and QuickBooks Enterprise accounting software. DMR was satisfied with Procore as a project management platform. The significant operational pain point was the absence of a seamless integration between Procore and QuickBooks, which required duplicate data entry between project management and accounting functions.

6. DMR communicated this to Trimble expressly and in writing from the outset. In the Business Process Review questionnaire that Trimble itself required DMR to complete, DMR identified the primary reason for leaving its incumbent software: the company had outgrown its current system and there was no seamless integration between Procore and QuickBooks. DMR identified its primary objective as the creation of a seamless environment with less duplication of work.

7. Against that backdrop, Trimble solicited DMR to replace both Procore and QuickBooks with Trimble's purportedly integrated offering, consisting of ProjectSight for project management and Spectrum for construction accounting. Trimble later replaced the integration software with AppXchange, as the integration layer between ProjectSight and Spectrum, without explanation or notification.

8. In order to fraudulently induce DMR to purchase its platform, Trimble knowingly represented to DMR, in writing, orally, and through the structure of its own sales and implementation documentation, among other things, that: (a) ProjectSight and Spectrum were natively and fully integrated Trimble products between which data would flow bidirectionally, such that DMR's project managers and accounting personnel would work from a single set of records; (b) the integrated system would eliminate duplicate data entry and parallel record-keeping; (c) approved potential change orders and change orders would sync logically and completely between ProjectSight and Spectrum, and DMR would be able to distinguish base contract work from change order work in its reporting; (d) the integrated environment would support AIA G702/G703 billing and payment application workflows without duplicate entry, with contract line items, schedules of values, approved change orders, and billing data flowing between the systems; (e)

purchase orders could be created and managed in ProjectSight using multiple cost types, including Material, Equipment, and Other Job Cost, and would integrate seamlessly with Spectrum; (f) invoices posted against subcontracts and purchase orders in Spectrum would properly reduce the corresponding commitments in ProjectSight, such that system-generated financial information could be relied upon as accurate; (g) DMR would be able to generate meaningful and reliable reports by project, entity, state, month, quarter, and year, including reporting distinguishing base contract value and profitability from change order value and profitability; (h) prime contracts and schedules of values could be created and managed within the integrated environment consistent with standard construction accounting and AIA billing practices; and (i) the integrated environment included invoice approval routing and workflow functionality that would streamline DMR's accounts payable and project management operations.

9. In furtherance of the nine specific material misrepresentations of fact cited in Paragraph "8," and to further induce Plaintiff to enter into an agreement, Trimble held itself out as the expert on its own products, their integration, recommended workflows, and best operational practices, and undertook to guide DMR through the Discovery, Design, Configuration, Training, Testing, Go-Live, and Optimization phases of the implementation.

10. Each of the foregoing representations was material to, and was reasonably relied upon by, DMR in its decision to purchase the Trimble platform and to abandon its functioning incumbent systems. But for those representations, DMR would not have executed the Agreement, would not have abandoned Procore and QuickBooks, and would not have paid Trimble any of the amounts alleged herein.

**B. The Agreement — Procured by Fraud and Composed of Trimble's Adhesive Terms**

11. On August 4, 2023, DMR executed Trimble Quote No. Q-171696 (the "Order") and a corresponding Statement of Work (the "SOW") for the implementation of the Spectrum Core Package (including Accounts Payable, Accounts Receivable, General Ledger, Job Cost, Payroll, Purchase Order, Cash Management, Document Imaging, Business Intelligence, and Workflow modules) and ProjectSight Services (Tier 2), together with three-year SaaS subscriptions to the foregoing platforms (collectively, with all documents incorporated therein, the "Agreement").

12. The initial contract value was $49,515, comprised of SaaS subscriptions and $27,400 in fixed-fee professional services. DMR thereafter paid Trimble additional consulting fees, subscription renewals, and other charges in connection with the engagement.

13. Under the SOW, Trimble committed to combine Trimble's knowledge of Spectrum and ProjectSight with DMR's business needs and to plan, design, configure, train, test, take live, and optimize an integrated implementation, on an estimated schedule of sixteen to twenty-two weeks from kickoff.

14. The Order and the SOW incorporated by reference Trimble's standard, pre-printed terms and conditions, which were drafted unilaterally by Trimble, presented to DMR on a take-it-or-leave-it basis as a condition of the purchase, and never negotiated.

15. Upon information and belief, those terms and conditions purport, among other things, to designate the law of a jurisdiction other than New Jersey as governing; to shorten the period within which claims may be brought below the limitations periods established by New Jersey statute; to disclaim express and implied warranties; to cap, limit, or exclude

categories of damages; to deem the implementation accepted or complete; and to disclaim reliance on representations made outside the written documents — the very representations by which Trimble procured DMR's signature.

**C. The Implementation Period: A Cooperative, Ongoing Engagement**

16. Following execution of the Agreement, the parties commenced the implementation. From 2023 through the summer of 2025, the parties were continuously and actively engaged, together, in the configuration, training, testing, adjustment, and refinement of the system, in the manner contemplated by the SOW's phased methodology.

17. During this period, as is common in enterprise software implementations, various configuration questions, workflow adjustments, synchronization items, and similar matters arose from time to time. The parties treated these matters as they arose as in-process implementation items to be worked through cooperatively within the ongoing engagement: DMR raised them; Trimble accepted them, assigned personnel to them, scheduled sessions concerning them, issued guidance and updates directed to them, and repeatedly assured DMR that they would be addressed and that the represented functionality would operate as intended.

18. Throughout this period, Trimble continuously performed, and held itself out as performing, its implementation obligations. Trimble assigned and reassigned consultants and project personnel to the engagement; conducted recurring implementation, training, troubleshooting, and remediation sessions; issued evolving workflow guidance; implemented system changes and updates; and invoiced DMR for consulting services in connection with the foregoing, which DMR paid.

19. At no time during this period did Trimble state or suggest to DMR that any represented functionality would not be delivered, that Trimble would not perform any obligation under the Agreement, or that any open item was anything other than an in-process matter that the parties' continued joint efforts would resolve. To the contrary, Trimble's consistent message to DMR, express and implied, through its words, its conduct, its staffing, and its invoices, was that the implementation was ongoing and that the represented functionality was forthcoming.

20. In reasonable reliance on Trimble's continued performance and repeated assurances, DMR continued to participate in the implementation, continued to devote substantial executive- and field-level resources to it, continued to pay Trimble's invoices, including subscription renewals and additional consulting fees, and refrained from treating any open implementation item as a failure of the engagement.

21. Unbeknownst to DMR during this period, and as Trimble much later admitted, the ProjectSight/Spectrum integration was not fully ready for the level of integration it was intended to support at the time Trimble sold it to DMR; DMR was among the first customers on which Trimble attempted this product configuration; and Trimble had internally changed development direction and was no longer pursuing certain of the represented integration functionality — none of which Trimble disclosed to DMR at the point of sale, during the implementation period, or at any renewal.

**D. September 2025: The Latent Defect Manifests**

22. On or about September 17 and 18, 2025, Trimble's own AppXchange integration system issued flow error notifications reporting the failure of an entire job-cost posting batch for one of DMR's active projects. The reported error — a failure to map job costs between

systems, arising from a null-reference error in Trimble's own integration code, which invoked an operation on a data field without first confirming the field existed, compounded by the absence of pre-validation against Spectrum's phase number mask — revealed a defect residing in Trimble's integration logic itself.

23. Subsequent independent analysis attributed the substantial majority of the root cause of the September 2025 batch failure to Trimble's integration code and configuration rather than to any act or omission of DMR.

24. The September 2025 events were the earliest documented manifestation, known to DMR, that the integration's failures were the product of latent defects in Trimble's own product and code — rather than in-process implementation items of the kind the parties had been cooperatively working through — and that the integrated functionality Trimble had represented and sold did not exist as represented.

**E. October 2025: Trimble's False Close-Out Demand and First Admissions**

25. On October 13, 2025, Trimble's Project Manager emailed DMR's Chief Financial Officer asserting that ProjectSight, AppXchange, and Spectrum were implemented and that synchronization was live for every project without any workflow errors, and requesting that DMR sign, through electronic signature, a project close-out document confirming that Trimble had delivered on everything Trimble promised in the Order.

26. That representation was false when made. Documented flow errors were then occurring in DMR's environment, and core represented functionality did not operate.

27. On October 23, 2025, DMR formally refused to sign the close-out and identified in writing, with screenshots of then-current flow error notifications, five categories of unresolved defects, including the absence of a functioning change order workflow between

ProjectSight and Spectrum, ongoing workflow errors, defective invoice-image functionality, the repeated failure of purchase order mapping to multiple cost types, and the absence of a live invoice approval workflow.

28. In its October 23, 2025 written response, Trimble admitted for the first time that the represented purchase order cost-type mapping functionality was, in Trimble's words, still in Trimble development — an admission flatly inconsistent with Trimble's representations at the point of sale and throughout the implementation period that such functionality existed and would operate.

29. On October 29, 2025, prompted by the foregoing, DMR revisited the 2023 Business Process Review questionnaire and confirmed that numerous requirements DMR had documented for Trimble at the outset of the engagement — requirements Trimble had accepted — had never been delivered in functioning form.

30. DMR has never signed any project close-out or acceptance document for the implementation, and go-live and close-out as contemplated by the SOW have never been achieved.

**F. The Defective and Non-Conforming System**

31. As of September and October 2025, and continuing to the present, the system Trimble sold and purported to implement fails to conform to Trimble's representations and to the Agreement in at least the following respects:

32. Change orders. Approved potential change orders and change orders do not sync logically or completely between ProjectSight and Spectrum; there is no functional ability to differentiate base contract work from change order work in Spectrum reporting; and no reporting exists to separate base contract transactions from change order transactions.

33. Billing. AIA billings must be managed substantially outside the Trimble environment through spreadsheet-based workarounds and manual reconciliation, with accounting personnel manually re-entering schedule-of-values line items and billing information into Spectrum — the precise duplicate-entry workflow DMR engaged Trimble to eliminate.

34. Purchase orders. Purchase orders can be mapped only to a Material cost type in ProjectSight; the represented ability to map purchase orders to Equipment or Other Job Cost categories does not function and, by Trimble's October 23, 2025 written admission, remains in development.

35. Financial accuracy. Invoices posted against subcontracts and purchase orders in Spectrum inconsistently and unreliably reduce the corresponding commitments in ProjectSight, in many cases posting instead as direct expenses that add to committed values rather than drawing them down — a logic defect that causes the same cost to be reflected twice and renders system-generated over/under reporting materially inaccurate, such that DMR cannot rely on system-generated financial reports or projections without significant manual reconciliation.

36. Schedules of values. Schedules of values cannot be structured as represented without material workflow limitations, including the inability to properly associate multiple budget or cost-code structures within the schedule-of-values environment.

37. Integration stability. The AppXchange platform generates recurring workflow and synchronization errors affecting invoice batching, job-cost posting, commitments, and other critical financial transactions, requiring DMR personnel to devote substantial time to monitoring, investigating, and remediating failures that Trimble has acknowledged, in

many instances, resulted from defects in Trimble's own integration logic, workflow configuration, or backend setup.

38. Reporting. DMR cannot produce a report from either system that clearly shows base contract value versus change order value, or cost and profitability by base contract versus change order, and has no ability to track scope additions, deductions, or internal transfers through the system.

39. Approval workflow. The represented invoice approval workflow can function only if project management personnel are active licensed users within Spectrum itself — a licensing and operational structure inconsistent with the configuration Trimble itself sold and recommended to DMR — rendering the represented workflow internally inconsistent and operationally unworkable as configured and licensed by Trimble.

40. The practical consequence of the foregoing is that DMR's project managers have been compelled to revert to maintaining project financials in spreadsheet workbooks outside the system — precisely the duplicate, off-system workflow that DMR engaged Trimble to eliminate.

**G. Trimble's Subsequent Admissions and Conduct**

41. On January 7, 2026, DMR sent a formal escalation letter to Trimble's senior executive management documenting the integration failures and demanding remediation at Trimble's expense. Trimble acknowledged receipt on January 14, 2026 and assigned its Director of North America Services Sales & Partner Management to the matter.

42. In February 2026, Trimble confirmed that its Solution Architects for both ProjectSight and Spectrum — the senior technical resources appropriate to the engagement from its outset

— were only then beginning a no-cost comprehensive review of DMR's environment, including the integration points themselves.

43. In or about March 2026, Trimble admitted, in a recorded communication preserved by DMR, that DMR was among the first customers attempting to use this product configuration; that the product was not fully ready for the level of integration it was intended to support at the time it was sold to DMR; and that Trimble had made updates and changes to the system without adequately informing or supporting DMR in implementing them.

44. These admissions established, and DMR then first fully understood, that the representations that induced DMR to execute the Agreement in August 2023 were false when made, and that the deficiencies DMR had experienced were not in-process implementation items susceptible of resolution through the parties' continued cooperative efforts, but the consequence of Trimble having sold DMR a product that did not exist as represented.

45. While its own implementation and remediation personnel remained engaged on defects DMR had escalated, Trimble's credit department simultaneously issued a formal suspension notice to DMR for non-payment of consulting invoices — charges Trimble had billed DMR in connection with efforts to make Trimble's own product perform the functions Trimble had already been paid to deliver.

**H. Accrual, Tolling, and Election of Rescission; Unenforceability of the Agreement's Terms**

46. Prior to September 17, 2025, Trimble was continuously performing its obligations under the Agreement; the parties were actively and cooperatively engaged in the ongoing

implementation; Trimble repeatedly assured DMR that all open items would be resolved and that the represented functionality was forthcoming.

47. DMR neither knew, nor in the exercise of reasonable diligence could have known, that the deficiencies it experienced were the product of latent defects in Trimble's product and code, that Trimble had abandoned or deprioritized represented functionality, or that Trimble's inducing representations were false when made.

48. DMR first obtained knowledge of facts indicating latent defect in Trimble's own product and code on or about September 17, 2025; first received Trimble's written admission that represented functionality remained in development on October 23, 2025; and first learned that the product had been sold before it was ready, by Trimble's own admission, in or about March 2026.

49. In addition, and in the alternative, Trimble's continued performance, repeated assurances of resolution, and concealment of the true state of its product induced DMR to forbear from asserting claims, and Trimble is estopped from contending that any claim accrued at any earlier time.

50. Trimble's fraud in the inducement vitiates each and every alleged term of the agreement, including choice of law, choice of venue, or any other term which purport to limit DMR's rights.

51. A contract procured by fraud in the inducement is void or voidable at the election of the defrauded party, and the party that procured the contract by fraud may not enforce any of its terms against the party it defrauded.

52. Because DMR's assent to the Agreement was procured by Trimble's fraudulent misrepresentations and omissions as alleged herein, DMR's assent was vitiated from the

inception, and the Agreement is void or voidable in its entirety. DMR hereby elects, to the fullest extent permitted by law and equity, to avoid and rescind the Agreement and disaffirms each and every one of its terms and conditions.

53. Separately, independently, and in the alternative, each of the foregoing categories of provisions is unenforceable in any event because the Agreement is a contract of adhesion drafted unilaterally by Trimble and presented on a take-it-or-leave-it basis; because such provisions are procedurally and substantively unconscionable as applied to the circumstances alleged herein, including Trimble's knowing sale of a product that was not ready for the represented level of integration; because such provisions fail of their essential purpose; and because their enforcement — in particular, the enforcement of any foreign choice-of-law provision or any shortened contractual limitations period to defeat the claims of a New Jersey plaintiff defrauded in New Jersey — would be contrary to the public policy of the State of New Jersey, including the policies embodied in the New Jersey Consumer Fraud Act.

54. New Jersey substantive law governs all claims asserted herein, and the limitations periods established by New Jersey statute apply.

**FIRST COUNT**

**(Fraud in the Inducement / Fraudulent Misrepresentation)**

55. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

56. In the course of soliciting DMR's business in 2023 — including in Trimble's sales presentations and communications to DMR's principals, in the Business Process Review process that Trimble itself required, and in the sales and implementation documentation

culminating in the August 4, 2023 Order and SOW — and thereafter in the course of the implementation and at each renewal, Trimble made the representations of material fact set forth in Paragraph "8" above, including that ProjectSight and Spectrum were natively and fully integrated; that the represented change order, billing, purchase order, commitment-accounting, schedule-of-values, approval-routing, and reporting functionality existed and would operate; and that the system would eliminate DMR's duplicate-entry workflows.

57. Those representations were false when made. As Trimble has since admitted, the product was not fully ready for the level of integration it was intended to support at the time it was sold to DMR; DMR was among the first customers on which the configuration was attempted; certain represented functionality was, years later, still in Trimble development; and Trimble changed development direction and abandoned or deprioritized represented functionality without ever disclosing that fact to DMR.

58. As the developer and vendor of its own products, Trimble knew, or was recklessly indifferent to, the falsity of its representations when made, and made them with the intent that DMR rely upon them in purchasing the platform, abandoning its incumbent systems, executing the Agreement, renewing its subscriptions, and continuing to pay implementation and consulting fees.

59. Trimble further fraudulently concealed material facts it was obligated to disclose — including the product's lack of readiness, DMR's status among the first customers on the configuration, and Trimble's abandonment of represented functionality — while continuing to accept DMR's payments and to assure DMR that the represented functionality was forthcoming.

60. DMR reasonably relied upon Trimble's representations and non-disclosures, to its detriment. DMR did not discover, and could not reasonably have discovered, the falsity of the representations until, at the earliest, the events of September and October 2025, and did not learn the full truth until Trimble's admissions of 2026.

61. In the alternative, and without regard to Trimble's knowledge or state of mind, Trimble's material misrepresentations upon which DMR relied constitute equitable fraud, entitling DMR to rescission and other equitable relief.

62. Trimble's fraud in the inducement vitiates the Agreement in its entirety, together with each and every one of its terms and conditions for the reasons set forth in paragraphs 50 through 54 above. DMR is entitled to rescission of the Agreement, restitution of all amounts paid thereunder, and a judicial declaration that the Agreement and all of its terms and conditions are void and unenforceable against DMR.

63. As a direct and proximate result of Trimble's fraud, DMR has suffered damages as set forth herein, and is further entitled to punitive damages by reason of Trimble's wanton, willful, and egregious conduct.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Rescission of the Agreement, and a judgment declaring that the Agreement and each and every one of its terms and conditions are void and unenforceable against DMR, specifically including any choice-of-law or governing-law provision and any contractual limitation-of-suit provision or other provision purporting to shorten any applicable statute of limitations;

b. Restitution of all amounts paid by DMR to Trimble, and rescissory damages;

c. Compensatory damages;

d. Consequential and incidental damages;

e. Punitive damages;

f. Pre-judgment and post-judgment interest;

g. Attorneys' fees and costs of suit to the extent recoverable; and

h. Such other and further relief as the Court deems equitable and just.

**SECOND COUNT**

**(Declaratory Judgment — N.J.S.A. 2A:16-50 et seq. — That the Agreement and All of Its Terms and Conditions Are Void and Unenforceable)**

64. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

65. An actual, justiciable controversy exists between DMR and Trimble concerning the validity and enforceability of the Agreement and of its terms and conditions, including whether any choice-of-law provision, contractual limitations period, warranty disclaimer, limitation of liability, damages exclusion, acceptance or close-out provision, or integration, merger, or no-reliance clause contained in or incorporated into the Agreement may be enforced against DMR.

66. DMR is entitled to a declaratory judgment, pursuant to N.J.S.A. 2A:16-50 et seq. and R. 4:42-3, that: (a) the Agreement was procured by Trimble's fraud in the inducement and is void or voidable, and is rescinded, in its entirety; (b) no term or condition of the Agreement is enforceable against DMR; (c) specifically, any choice-of-law or governing-law provision of the Agreement is void and unenforceable, and New Jersey substantive law governs all claims and defenses in this action; (d) specifically, any contractual limitation-of-suit provision or other provision purporting to shorten any statute of limitations is void and unenforceable, the limitations periods established by New Jersey statute govern all

claims asserted herein, and no claim asserted herein is time-barred; (e) any disclaimer or limitation of warranties, limitation of liability, damages cap, or exclusion of consequential, incidental, or punitive damages is void and unenforceable; and (f) no integration, merger, or purported no-reliance clause bars any claim asserted herein.

67. A declaration of the foregoing will resolve a substantial and presently existing controversy between the parties and will settle the legal relations at issue.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. A declaratory judgment as set forth in this Count, including specifically that any choice-of-law provision and any contractual limitations provision of the Agreement are void and unenforceable and that New Jersey law and New Jersey statutory limitations periods govern;

b. Pre-judgment and post-judgment interest;

c. Attorneys' fees and costs of suit to the extent recoverable; and

d. Such other and further relief as the Court deems equitable and just.

**THIRD COUNT**

**(New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.)**

68. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

69. The sale of the ProjectSight/Spectrum/AppXchange platform and associated implementation and consulting services to DMR constitutes the sale of merchandise within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (the "CFA"), and DMR is a person entitled to the protections of the CFA.

70. Trimble engaged in unlawful practices within the meaning of N.J.S.A. 56:8-2, including affirmative misrepresentations of material fact concerning the existence, readiness, and functionality of the integrated system, and knowing omissions and concealment of material facts — including the product's lack of readiness, DMR's status among the first customers on the configuration, and Trimble's abandonment of represented functionality — with the intent that DMR rely thereon, in connection with the sale and subsequent servicing and renewal of the merchandise.

71. Trimble's unlawful practices were employed to procure the very Agreement whose terms Trimble may seek to invoke in its defense. No provision of the Agreement may operate to limit, shorten, waive, or abrogate DMR's rights and remedies under the CFA, which as a matter of New Jersey law and public policy may not be contracted away.

72. As a direct and proximate result of Trimble's unlawful practices, DMR suffered ascertainable losses of money and property, including amounts paid to Trimble, third-party consulting fees, and the quantifiable costs of duplicate record-keeping and manual reconciliation. DMR is entitled under N.J.S.A. 56:8-19 to threefold its ascertainable losses, together with reasonable attorneys' fees, filing fees, and costs of suit.

**WHEREFORE,** Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Ascertainable losses, trebled pursuant to N.J.S.A. 56:8-19;

b. Reasonable attorneys' fees, filing fees, and costs of suit;

c. Pre-judgment and post-judgment interest; and

d. Such other and further relief as the Court deems equitable and just.

**FOURTH COUNT**

**(Negligent Misrepresentation — In the Alternative)**

73. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

74. In the alternative, Trimble negligently made the false representations of material fact set forth above, without reasonable grounds for believing them to be true, in circumstances in which Trimble knew or should have known that DMR would rely upon them.

75. DMR justifiably relied upon those representations to its detriment and, as a direct and proximate result, has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**FIFTH COUNT**

**(Breach of Contract — In the Alternative)**

76. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

77. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void, the Order and the SOW, together with the terms incorporated therein, constitute a valid and binding contract between DMR and Trimble, under which

Trimble was obligated, among other things, to implement, configure, train, test, take live, and optimize an integrated ProjectSight/Spectrum/AppXchange system conforming to the Agreement, exercising Trimble's expertise in its own products.

78. DMR performed its obligations under the Agreement, including payment of the contract price, subscription renewals, and additional consulting fees, and the devotion of substantial personnel and resources to the implementation, except to the extent performance was excused, prevented, or rendered futile by Trimble's conduct.

79. Trimble materially breached the Agreement by, among other things: failing to deliver a functioning integrated system conforming to the Agreement; falsely representing on October 13, 2025 that the implementation was complete and error-free and demanding execution of a close-out document on that false premise; failing and refusing thereafter to remediate the latent defects in its product, code, and configuration; and failing to complete go-live and close-out as contemplated by the SOW.

80. In the event Trimble invokes any term of the Agreement in defense of this Count, each such term is void and unenforceable for the reasons set forth in paragraphs 50 through 54 above.

81. As a direct and proximate result of Trimble's breaches, DMR has suffered damages including, without limitation, amounts paid to Trimble, third-party consulting fees, internal labor and opportunity costs associated with manual reconciliation and duplicate record-keeping across its entities and projects, and cover and mitigation costs.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable by contract, statute, or equity; and

e. Such other and further relief as the Court deems equitable and just.

**SIXTH COUNT**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing — In the Alternative)**

82. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

83. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing, obligating each party to refrain from conduct that destroys or injures the other party's right to receive the fruits of the contract.

84. Trimble breached the implied covenant by, among other things: withholding from DMR, throughout the implementation period and at each renewal, that the product was not ready for the represented level of integration and that Trimble had changed development direction and abandoned or deprioritized represented functionality; continuing to accept subscription renewals and to bill consulting fees for remediation of its own product's defects while withholding that information; demanding on false premises that DMR execute a close-out acknowledging full delivery; and pursuing collections and credit-suspension measures against DMR for fees incurred in attempting to make Trimble's own product perform as sold.

85. As a direct and proximate result, DMR has been deprived of the fruits of the Agreement and has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

## SEVENTH COUNT

### (Breach of Express Warranty — In the Alternative)

86. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

87. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: Trimble's affirmations of fact and promises concerning the ProjectSight/Spectrum/AppXchange system — including that the platforms were natively integrated; that duplicate entry would be eliminated; that change order, purchase order, AIA billing, schedule-of-values, approval-routing, and reporting workflows would function as described; and that system-generated financial information could be relied upon as accurate — related to the goods and services sold and became part of the basis of the bargain, creating express warranties.

88. The system as delivered does not conform to those affirmations and promises, and Trimble has thereby breached its express warranties.

89. DMR notified Trimble of the non-conformities within a reasonable time after discovering them, including in writing on October 23, 2025 and January 7, 2026.

90. As a direct and proximate result, DMR has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**EIGHTH COUNT**

**(Breach of Implied Warranties — In the Alternative)**

91. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

92. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: at the time of contracting, Trimble knew the particular purpose for which DMR required the system — an integrated replacement for Procore and QuickBooks that would eliminate duplicate entry and provide a single, reliable source of project and financial information — and knew that DMR was relying on Trimble's skill and judgment to select, furnish, and implement a suitable system.

93. The system as delivered is not fit for that particular purpose, and is not merchantable as an integrated construction management and accounting platform of the kind Trimble holds

itself out as providing, in breach of the implied warranties of fitness for a particular purpose and merchantability.

94. Any purported disclaimer or limitation of such warranties — and any other term of the Agreement invoked to defeat this Count, including any choice-of-law provision or any contractual limitations period — is void and unenforceable for the reasons set forth in paragraphs 50 through 54 above, and is in any event unenforceable, unconscionable, and/or fails of its essential purpose under the circumstances alleged herein, including Trimble's knowing sale of a product that was not ready for the represented level of integration.

95. As a direct and proximate result, DMR has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**NINTH COUNT**

**(Unjust Enrichment — In the Alternative)**

96. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

97. In the alternative, and including in the event the Agreement is rescinded or declared void or Trimble disputes the scope, applicability, or enforceability of any contractual provision,

Trimble received and retained from DMR subscription fees, professional services fees, and consulting fees for a product and implementation that do not function as represented, under circumstances in which retention of those benefits without payment would be unjust.

98. DMR conferred those benefits with the reasonable expectation of receiving the functioning integrated system Trimble represented, and Trimble's retention of the benefits without delivering that system has unjustly enriched Trimble at DMR's expense.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Restitution and disgorgement of all amounts by which Trimble has been unjustly enriched;

b. Pre-judgment and post-judgment interest;

c. Costs of suit; and

d. Such other and further relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to R. 4:35-1.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Joseph M. Cerra, Esq. is hereby designated as trial counsel on behalf of Plaintiff.

## CERTIFICATION PURSUANT TO R. 4:5-1

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration

proceeding is contemplated by Plaintiff, and that I am not aware at this time of any other party who should be joined in this action.

**CERTIFICATION PURSUANT TO R. 1:38-7(c)**

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

**LYNCH LAW FIRM, P.C.**
*Attorneys for Plaintiff*

By: /s/ Joseph M. Cerra
Joseph M. Cerra, Esq.

Dated: July 31, 2026

**SUPERIOR COURT OF NEW JERSEY - eCOURTS CIVIL LAW**

The following clerk notice is being sent from eCourts:

| | |
|---|---|
| Plaintiff Name: | DMR CONSTRUCTION SERVICES, INC., |
| Defendant Name: | TRIMBLE, INC. |
| Case Caption: | DMR CONSTRUCTION SER VICES, IN VS TRIMBLE, INC. |
| Case Number: | BER L 007357-26 |
| Docket Text: | CLERK NOTICE: re: Complaint LCV20262020741 -A case management conference has been scheduled for 10/7/26 at 10AM before Judge Nasta, Via Zoom. Zoom instructions will be provided at a later date. Thank you. |
| Transaction ID: | LCV20262128912 |

**Notice has been electronically mailed to:**

| | | |
|---|---|---|
| Plaintiff Attorney | JOSEPH MICHAEL CERRA | JCERRA@LYNCHLAWYERS.COM<br>JOSEPHMCERRA@GMAIL.COM |

**Notice was not electronically mailed to:**

| | | |
|---|---|---|
| Defendant | TRIMBLE, INC. | 10368 WESTMOOR DRIVE, WESTMINSTER, CO 80021 |

Login to eCourts to view the Case Jacket. You will need a valid user ID (Bar ID) to view the submitted documents.

For questions, please contact the Superior Court of New Jersey Civil Division in county of venue.

This communication is for notification purposes only.

This email was sent from a notification-only address that cannot accept incoming mail. Please do not reply to this message.

DMR CONSTRUCTION SERVICES, INC. Plaintiff

vs.

TRIMBLE INC. Defendant

Superior Court of New Jersey
Law Division
Bergen County
Docket Number: BER-L-007357-26

**Person to be served** (Name & Address):
TRIMBLE INC.
C/O CT CORPORATION SYSTEM, RA
820 BEAR TAVERN ROAD
WEST TRENTON, NJ 08628

**Attorney:**
JOSEPH M. CERRA, ESQ.
LYNCH LAW FIRM, P.C.

## AFFIDAVIT OF SERVICE

(For Use by Private Service)

STS2026046079

Cost of Service pursuant to R. 4:4-3(c)

$______________

**Papers Served:** Summons, Complaint, Jury Demand, Certification Pursuant to R. 4:5-1, Certification Pursuant to R.1:38-7 (c), CIS, Track Assignment Notice and Lawyers Referral List

**Service Data:**

Served Successfully __X__ Not Served_____ Date: 8/13/2026 Time: 10:35 am Attempts:_____

__________ Delivered a copy to him / her personally

__________ Left a copy with a competent household member over 14 years of age residing therein

____X____ Left a copy with a person authorized to accept service, e.g. managing agent, registered agent, etc.

Name of Person Served and relationship / title:

Scott Kuntz

Registered Agent/Managing Agent At RA Office

**Description of Person Accepting Service:**

Sex: M Age: 42 Height: 5'8" Weight: 170 Skin Color: Caucasian Hair Color: Light Brown

**Comments or Remarks:**

**Server Data:**

To Be Used Where Electronic Signature Not Available
Served Data: Subscribed and Sworn to before me on __________2026 by the affiant who is personally known to me.

______________________________
NOTARY PUBLIC

HelloSign Approved E-Signature

I, Sharon McCabe Villa, was at the time of service a competent adult not having a direct interest in the litigation. I declare under penalty of perjury that the foregoing is true and correct.

[signature] 08 / 14 / 2026

Signature of Process Server Date

STATUS, L.L.C.
PO Box 370
Bayville, NJ 08721
(908) 688-1414
Our Job Serial Number: STS-2026046079

# EXHIBIT B

Wolters Kluwer

**CT Corporation**
**Service of Process Notification**
08/13/2026
CT Log Number 553051147

## Service of Process Transmittal Summary

**TO:** Legal Department
Trimble Inc.
935 STEWART DR
SUNNYVALE, CA 94085-3913

**RE:** **Process Served in New Jersey**

**FOR:** Trimble Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** DMR CONSTRUCTION SERVICES, INC. vs. TRIMBLE INC.

**CASE #:** BERL735726

**PROCESS SERVED ON:** C T Corporation System, West Trenton, NJ

**DATE/METHOD OF SERVICE:** By Process Server on 08/13/2026 at 10:54

**JURISDICTION SERVED:** New Jersey

**ACTION ITEMS:** CT will retain the current log

Image SOP

Email Notification, Legal Department legal_administration@trimble.com

Email Notification, Paul Rimas paul_rimas@trimble.com

Email Notification, Tiffany Heiner tiffany_heiner@trimble.com

Email Notification, Eric Lambert eric_lambert@trimble.com

Email Notification, Leticia Roady leticia_roady@trimble.com

Email Notification, Tyra Martin tyra_martin@trimble.com

Email Notification, Danyiasia Thibodeaux danyiasia_thibodeaux@trimble.com

Email Notification, Michaela Martin michaela_martin@trimble.com

Email Notification, Michaela Smith michaela_smith@trimble.com

**REGISTERED AGENT CONTACT:** C T Corporation System
820 Bear Tavern Road
West Trenton, NJ 08628
866-401-8252
LargeCorporationTeam@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

# PROCESS SERVER DELIVERY DETAILS

**Date:** Thu, Aug 13, 2026
**Server Name:** Drop Service

| | |
|---|---|
| Entity Served | TRIMBLE INC. |
| Case Number | BER-L-7357-26 |
| Jurisdiction | NJ |

| Inserts | | |
|---|---|---|
| | | |

**LYNCH LAW FIRM, P.C.**
**Joseph M. Cerra, Esq.**
**NJ ATTORNEY ID# 050991988**
440 State Route 17 North
Hasbrouck Heights, NJ 07604
(201) 288-2022
Attorneys for Plaintiff,

| | |
|---|---|
| DMR CONSTRUCTION SERVICES, INC,<br><br>Plaintiff,<br><br>-vs-<br><br>TRIMBLE INC., and/or "JOHN DOES 1-10" (fictitious names, true names unknown), and/or "ABC CORPORATIONS 1-10" (fictitious names, true names unknown),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION:BERGEN COUNTY<br><br>DOCKET NO.: BER-L-7357-26<br><br>Civil Action<br><br>**SUMMONS** |

**FROM THE STATE OF NEW JERSEY**, To The Defendant(s) Named Above:

The plaintiff, named above, has filed a lawsuit against you in the Superior Court of New Jersey. The complaint attached to this summons states the basis for this lawsuit. If you dispute this complaint, you or your attorney must file a written answer or motion and proof of service with the deputy clerk of the Superior Court in the county listed above within **35 days** from the date you received this summons, not counting the date you received it. (A directory of the addresses of each deputy clerk of the Superior Court is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.) If the complaint is one in foreclosure, then you must file your written answer or motion and proof of service with the Clerk of the Superior Court, Hughes Justice Complex, P.O. Box 971, Trenton, NJ 08625-0971. A filing fee payable to the Treasurer, State of New Jersey and a completed Case Information Statement (available from the deputy clerk of the Superior Court) must accompany your answer or motion when it is filed. You must also send a copy of your answer or motion to plaintiff's attorney whose name and address appear above, or to plaintiff, if no attorney is named above. A telephone call will not protect your rights; you must file and serve a written answer or motion (with fee of $175.00 and completed Case Information Statement) if you want the court to hear your defense.

If you do not file and serve a written answer or motion within 35 days, the court may enter a judgment against you for the relief plaintiff demands, plus interest and costs of suit. If judgment is entered against you, the Sheriff may seize your money, wages or property to pay all or part of the judgment.

If you cannot afford an attorney, you may call the Legal Services office in the county where you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529). If you do not have an attorney and are not eligible for free legal assistance, you may obtain a referral to an attorney by calling one of the Lawyer Referral Services. A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov.

Dated:

/s Michelle M. Smith, Esq.
Clerk of the Superior Court

Name of Defendant to be served:
Address of Defendants to be served:

**Trimble Inc.**
**c/o C T CORPORATION SYSTEM**
**820 BEAR TAVERN ROAD**
**WEST TRENTON,NJ,08628**

**DIRECTORY OF SUPERIOR COURT DEPUTY CLERK'S OFFICES**
**COUNTY LAWYER REFERRAL AND LEGAL SERVICES OFFICES**

**ATLANTIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Direct Filing
1201 Bacharach Blvd., First Fl.
Atlantic City, NJ 08401

LAWYER REFERRAL
(609) 345-3444
LEGAL SERVICES
(609) 348-4200

**BERGEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division, Room 115
Justice Center, 10 Main St.
Hackensack, NJ 07601

LAWYER REFERRAL
(201) 488-0044
LEGAL SERVICES
(201) 487-2166

**BURLINGTON COUNTY:**
Deputy Clerk of the Superior Court
Central Processing Office
Attn: Judicial Intake
First Fl., Courts Facility
49 Rancocas Rd.
Mt. Holly, NJ 08060

LAWYER REFERRAL
(609) 261-4862
LEGAL SERVICES
(800) 496-4570

**CAMDEN COUNTY:**
Deputy Clerk of the Superior Court
Civil Processing Office
Hall of Justice 1st Fl., Suite 150
101 South 5th Street
Camden, NJ 08103

LAWYER REFERRAL
(856) 964-4520
LEGAL SERVICES
(856) 964-2010

**CAPE MAY COUNTY:**
Deputy Clerk of the Superior Court
9 N. Main Street
Cape May Court House, NJ 08210

LAWYER REFERRAL
(609) 463-0313
LEGAL SERVICES
(609) 465-3001

**CUMBERLAND COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
60 West Broad Street
P.O. Box 10
Bridgeton, NJ 08302

LAWYER REFERRAL
(856) 692-6207
LEGAL SERVICES
(856) 451-0003

**ESSEX COUNTY:**
Deputy Clerk of the Superior Court
Civil Customer Service
Hall of Records, Room 201
465 Dr. Martin Luther King Jr. Blvd.
Newark, NJ 07102

LAWYER REFERRAL
(973) 622-6204
LEGAL SERVICES
(973) 624-4500

**GLOUCESTER COUNTY:**
Deputy Clerk of the Superior Court
Civil Case Management Office
Attn: Intake
First Fl., Court House
1 North Broad Street
Woodbury, NJ 08096

LAWYER REFERRA
L (856) 848-4589
LEGAL SERVICES
(856) 848-5360

**HUDSON COUNTY:**
Deputy Clerk of the Superior Court
Superior Court, Civil Records Dept.
Brennan Court House--1st Floor
583 Newark Ave.
Jersey City, NJ 07306

LAWYER REFERRAL
(201) 798-2727
LEGAL SERVICES
(201) 792-6363

**HUNTERDON COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
65 Park Avenue
Flemington, NJ 08822

LAWYER REFERRAL
(908) 735-2611
LEGAL SERVICES
(908) 782-7979

**MERCER COUNTY:**
Deputy Clerk of the Superior Court
Local Filing Office, Courthouse
175 S. Broad Street, P.O. Box 8068
Trenton, NJ 08650

LAWYER REFERRAL
(609) 585-6200
LEGAL SERVICES
(609) 695-6249

**MIDDLESEX COUNTY:**
Deputy Clerk of the Superior Court, Middlesex Vicinage
2nd Floor - Tower
56 Paterson Street, P.O. Box 2633
New Brunswick, NJ 08903-2633

LAWYER REFERRAL
(732) 828-0053
LEGAL SERVICES
(732) 249-7600

**MONMOUTH COUNTY:**
Deputy Clerk of the Superior Court
Court House
P.O. Box 1269
Freehold, NJ 07728-1269

LAWYER REFERRAL
(732) 431-5544
LEGAL SERVICES
(732) 866-0020

**MORRIS COUNTY:**
Morris County Courthouse
Civil Division
Washington and Court Streets
P. O. Box 910
Morristown, NJ 07963-0910

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 285-6911

**OCEAN COUNTY:**
Deputy Clerk of the Superior Court
118 Washington Street, Room 121
P.O. Box 2191
Toms River, NJ 08754-2191

LAWYER REFERRAL
(732) 240-3666
LEGAL SERVICES
(732) 341-2727

**PASSAIC COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
Court House
77 Hamilton Street
Paterson, NJ 07505

LAWYER REFERRAL
(973) 278-9223
LEGAL SERVICES
(973) 523-2900

**SALEM COUNTY:**
Deputy Clerk of the Superior Court
Attn: Civil Case Management Office
92 Market Street
Salem, NJ 08079

LAWYER REFERRAL
(856) 678-8363
LEGAL SERVICES
(856) 451-0003

**SOMERSET COUNTY:**
Deputy Clerk of the Superior Court
Civil Division
P.O. Box 3000
40 North Bridge Street
Somerville, N.J. 08876

LAWYER REFERRAL
(908) 685-2323
LEGAL SERVICES
(908) 231-0840

**SUSSEX COUNTY:**
Deputy Clerk of the Superior Court
Sussex County Judicial Center
43-47 High Street
Newton, NJ 07860

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(973) 383-7400

**UNION COUNTY:**
Deputy Clerk of the Superior Court
1st Fl., Court House
2 Broad Street
Elizabeth, NJ 07207-6073

LAWYER REFERRAL
(908) 353-4715
LEGAL SERVICES
(908) 354-4340

**WARREN COUNTY:**
Deputy Clerk of the Superior Court
Civil Division Office Court House
413 Second Street
Belvidere, NJ 07823-1500

LAWYER REFERRAL
(973) 267-5882
LEGAL SERVICES
(908) 475-2010

**LYNCH LAW FIRM, P.C.**
Joseph M. Cerra, Esq. (050991988)
440 State Route 17 North, 3rd Floor
Hasbrouck Heights, New Jersey 07604
(201) 288-2022
jcerra@lynchlawyers.com
*Attorneys for Plaintiff DMR Construction Services, Inc.*

| | |
|---|---|
| **DMR CONSTRUCTION SERVICES, INC.,**<br><br>Plaintiff,<br><br>v.<br><br>**TRIMBLE INC.,**<br><br>Defendant. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: BERGEN COUNTY<br><br>DOCKET NO. BER-L-<br><br>Civil Action<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff DMR Construction Services, Inc. ("DMR" or "Plaintiff"), by and through its undersigned counsel, by way of Complaint against Defendant Trimble Inc. ("Trimble" or "Defendant"), alleges as follows:

## THE PARTIES

1. Plaintiff DMR is a corporation organized under the laws of the State of New Jersey with its principal place of business at 160 Hopper Avenue, Waldwick, Bergen County, New Jersey. DMR is a general contractor performing public and private construction work in New Jersey and Florida, operating through a family of affiliated legal entities and managing numerous active construction projects at any given time.

2. Defendant Trimble is a corporation with a principal place of business at 10368 Westmoor Drive, Westminster, Colorado. Trimble develops, markets, sells, implements, and services construction technology products, including the ProjectSight construction project

management platform, the Spectrum construction accounting platform, and the AppXchange integration platform, and at all relevant times transacted business, solicited business, and derived substantial revenue from goods and services sold, implemented, and serviced within the State of New Jersey, including within Bergen County.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over Trimble because Trimble purposefully directed its sales, implementation, training, support, and servicing activities at DMR in New Jersey; contracted to supply goods and services in New Jersey; and committed the acts and omissions alleged herein, including the fraudulent conduct alleged herein, in substantial part in New Jersey.

4. Venue is proper in Bergen County pursuant to R. 4:3-2 because the causes of action arose in Bergen County, where DMR maintains its principal place of business, where Trimble's fraudulent representations were received and relied upon, and where the harm alleged herein was suffered.

**FACTS COMMON TO ALL COUNTS**

**A. DMR's Requirements and Trimble's Fraudulent Inducing Representations**

5. Prior to the transaction at issue, DMR managed its construction operations using Procore construction management software and QuickBooks Enterprise accounting software. DMR was satisfied with Procore as a project management platform. The significant operational pain point was the absence of a seamless integration between Procore and QuickBooks, which required duplicate data entry between project management and accounting functions.

6. DMR communicated this to Trimble expressly and in writing from the outset. In the Business Process Review questionnaire that Trimble itself required DMR to complete, DMR identified the primary reason for leaving its incumbent software: the company had outgrown its current system and there was no seamless integration between Procore and QuickBooks. DMR identified its primary objective as the creation of a seamless environment with less duplication of work.

7. Against that backdrop, Trimble solicited DMR to replace both Procore and QuickBooks with Trimble's purportedly integrated offering, consisting of ProjectSight for project management and Spectrum for construction accounting. Trimble later replaced the integration software with AppXchange, as the integration layer between ProjectSight and Spectrum, without explanation or notification.

8. In order to fraudulently induce DMR to purchase its platform, Trimble knowingly represented to DMR, in writing, orally, and through the structure of its own sales and implementation documentation, among other things, that: (a) ProjectSight and Spectrum were natively and fully integrated Trimble products between which data would flow bidirectionally, such that DMR's project managers and accounting personnel would work from a single set of records; (b) the integrated system would eliminate duplicate data entry and parallel record-keeping; (c) approved potential change orders and change orders would sync logically and completely between ProjectSight and Spectrum, and DMR would be able to distinguish base contract work from change order work in its reporting; (d) the integrated environment would support AIA G702/G703 billing and payment application workflows without duplicate entry, with contract line items, schedules of values, approved change orders, and billing data flowing between the systems; (e)

purchase orders could be created and managed in ProjectSight using multiple cost types, including Material, Equipment, and Other Job Cost, and would integrate seamlessly with Spectrum; (f) invoices posted against subcontracts and purchase orders in Spectrum would properly reduce the corresponding commitments in ProjectSight, such that system-generated financial information could be relied upon as accurate; (g) DMR would be able to generate meaningful and reliable reports by project, entity, state, month, quarter, and year, including reporting distinguishing base contract value and profitability from change order value and profitability; (h) prime contracts and schedules of values could be created and managed within the integrated environment consistent with standard construction accounting and AIA billing practices; and (i) the integrated environment included invoice approval routing and workflow functionality that would streamline DMR's accounts payable and project management operations.

9. In furtherance of the nine specific material misrepresentations of fact cited in Paragraph "8," and to further induce Plaintiff to enter into an agreement, Trimble held itself out as the expert on its own products, their integration, recommended workflows, and best operational practices, and undertook to guide DMR through the Discovery, Design, Configuration, Training, Testing, Go-Live, and Optimization phases of the implementation.

10. Each of the foregoing representations was material to, and was reasonably relied upon by, DMR in its decision to purchase the Trimble platform and to abandon its functioning incumbent systems. But for those representations, DMR would not have executed the Agreement, would not have abandoned Procore and QuickBooks, and would not have paid Trimble any of the amounts alleged herein.

**B. The Agreement — Procured by Fraud and Composed of Trimble's Adhesive Terms**

11. On August 4, 2023, DMR executed Trimble Quote No. Q-171696 (the "Order") and a corresponding Statement of Work (the "SOW") for the implementation of the Spectrum Core Package (including Accounts Payable, Accounts Receivable, General Ledger, Job Cost, Payroll, Purchase Order, Cash Management, Document Imaging, Business Intelligence, and Workflow modules) and ProjectSight Services (Tier 2), together with three-year SaaS subscriptions to the foregoing platforms (collectively, with all documents incorporated therein, the "Agreement").

12. The initial contract value was $49,515, comprised of SaaS subscriptions and $27,400 in fixed-fee professional services. DMR thereafter paid Trimble additional consulting fees, subscription renewals, and other charges in connection with the engagement.

13. Under the SOW, Trimble committed to combine Trimble's knowledge of Spectrum and ProjectSight with DMR's business needs and to plan, design, configure, train, test, take live, and optimize an integrated implementation, on an estimated schedule of sixteen to twenty-two weeks from kickoff.

14. The Order and the SOW incorporated by reference Trimble's standard, pre-printed terms and conditions, which were drafted unilaterally by Trimble, presented to DMR on a take-it-or-leave-it basis as a condition of the purchase, and never negotiated.

15. Upon information and belief, those terms and conditions purport, among other things, to designate the law of a jurisdiction other than New Jersey as governing; to shorten the period within which claims may be brought below the limitations periods established by New Jersey statute; to disclaim express and implied warranties; to cap, limit, or exclude

categories of damages; to deem the implementation accepted or complete; and to disclaim reliance on representations made outside the written documents — the very representations by which Trimble procured DMR's signature.

## C. The Implementation Period: A Cooperative, Ongoing Engagement

16. Following execution of the Agreement, the parties commenced the implementation. From 2023 through the summer of 2025, the parties were continuously and actively engaged, together, in the configuration, training, testing, adjustment, and refinement of the system, in the manner contemplated by the SOW's phased methodology.

17. During this period, as is common in enterprise software implementations, various configuration questions, workflow adjustments, synchronization items, and similar matters arose from time to time. The parties treated these matters as they arose as in-process implementation items to be worked through cooperatively within the ongoing engagement: DMR raised them; Trimble accepted them, assigned personnel to them, scheduled sessions concerning them, issued guidance and updates directed to them, and repeatedly assured DMR that they would be addressed and that the represented functionality would operate as intended.

18. Throughout this period, Trimble continuously performed, and held itself out as performing, its implementation obligations. Trimble assigned and reassigned consultants and project personnel to the engagement; conducted recurring implementation, training, troubleshooting, and remediation sessions; issued evolving workflow guidance; implemented system changes and updates; and invoiced DMR for consulting services in connection with the foregoing, which DMR paid.

19. At no time during this period did Trimble state or suggest to DMR that any represented functionality would not be delivered, that Trimble would not perform any obligation under the Agreement, or that any open item was anything other than an in-process matter that the parties' continued joint efforts would resolve. To the contrary, Trimble's consistent message to DMR, express and implied, through its words, its conduct, its staffing, and its invoices, was that the implementation was ongoing and that the represented functionality was forthcoming.

20. In reasonable reliance on Trimble's continued performance and repeated assurances, DMR continued to participate in the implementation, continued to devote substantial executive- and field-level resources to it, continued to pay Trimble's invoices, including subscription renewals and additional consulting fees, and refrained from treating any open implementation item as a failure of the engagement.

21. Unbeknownst to DMR during this period, and as Trimble much later admitted, the ProjectSight/Spectrum integration was not fully ready for the level of integration it was intended to support at the time Trimble sold it to DMR; DMR was among the first customers on which Trimble attempted this product configuration; and Trimble had internally changed development direction and was no longer pursuing certain of the represented integration functionality — none of which Trimble disclosed to DMR at the point of sale, during the implementation period, or at any renewal.

**D. September 2025: The Latent Defect Manifests**

22. On or about September 17 and 18, 2025, Trimble's own AppXchange integration system issued flow error notifications reporting the failure of an entire job-cost posting batch for one of DMR's active projects. The reported error — a failure to map job costs between

systems, arising from a null-reference error in Trimble's own integration code, which invoked an operation on a data field without first confirming the field existed, compounded by the absence of pre-validation against Spectrum's phase number mask — revealed a defect residing in Trimble's integration logic itself.

23. Subsequent independent analysis attributed the substantial majority of the root cause of the September 2025 batch failure to Trimble's integration code and configuration rather than to any act or omission of DMR.

24. The September 2025 events were the earliest documented manifestation, known to DMR, that the integration's failures were the product of latent defects in Trimble's own product and code — rather than in-process implementation items of the kind the parties had been cooperatively working through — and that the integrated functionality Trimble had represented and sold did not exist as represented.

**E. October 2025: Trimble's False Close-Out Demand and First Admissions**

25. On October 13, 2025, Trimble's Project Manager emailed DMR's Chief Financial Officer asserting that ProjectSight, AppXchange, and Spectrum were implemented and that synchronization was live for every project without any workflow errors, and requesting that DMR sign, through electronic signature, a project close-out document confirming that Trimble had delivered on everything Trimble promised in the Order.

26. That representation was false when made. Documented flow errors were then occurring in DMR's environment, and core represented functionality did not operate.

27. On October 23, 2025, DMR formally refused to sign the close-out and identified in writing, with screenshots of then-current flow error notifications, five categories of unresolved defects, including the absence of a functioning change order workflow between

ProjectSight and Spectrum, ongoing workflow errors, defective invoice-image functionality, the repeated failure of purchase order mapping to multiple cost types, and the absence of a live invoice approval workflow.

28. In its October 23, 2025 written response, Trimble admitted for the first time that the represented purchase order cost-type mapping functionality was, in Trimble's words, still in Trimble development — an admission flatly inconsistent with Trimble's representations at the point of sale and throughout the implementation period that such functionality existed and would operate.

29. On October 29, 2025, prompted by the foregoing, DMR revisited the 2023 Business Process Review questionnaire and confirmed that numerous requirements DMR had documented for Trimble at the outset of the engagement — requirements Trimble had accepted — had never been delivered in functioning form.

30. DMR has never signed any project close-out or acceptance document for the implementation, and go-live and close-out as contemplated by the SOW have never been achieved.

**F. The Defective and Non-Conforming System**

31. As of September and October 2025, and continuing to the present, the system Trimble sold and purported to implement fails to conform to Trimble's representations and to the Agreement in at least the following respects:

32. Change orders. Approved potential change orders and change orders do not sync logically or completely between ProjectSight and Spectrum; there is no functional ability to differentiate base contract work from change order work in Spectrum reporting; and no reporting exists to separate base contract transactions from change order transactions.

33. Billing. AIA billings must be managed substantially outside the Trimble environment through spreadsheet-based workarounds and manual reconciliation, with accounting personnel manually re-entering schedule-of-values line items and billing information into Spectrum — the precise duplicate-entry workflow DMR engaged Trimble to eliminate.

34. Purchase orders. Purchase orders can be mapped only to a Material cost type in ProjectSight; the represented ability to map purchase orders to Equipment or Other Job Cost categories does not function and, by Trimble's October 23, 2025 written admission, remains in development.

35. Financial accuracy. Invoices posted against subcontracts and purchase orders in Spectrum inconsistently and unreliably reduce the corresponding commitments in ProjectSight, in many cases posting instead as direct expenses that add to committed values rather than drawing them down — a logic defect that causes the same cost to be reflected twice and renders system-generated over/under reporting materially inaccurate, such that DMR cannot rely on system-generated financial reports or projections without significant manual reconciliation.

36. Schedules of values. Schedules of values cannot be structured as represented without material workflow limitations, including the inability to properly associate multiple budget or cost-code structures within the schedule-of-values environment.

37. Integration stability. The AppXchange platform generates recurring workflow and synchronization errors affecting invoice batching, job-cost posting, commitments, and other critical financial transactions, requiring DMR personnel to devote substantial time to monitoring, investigating, and remediating failures that Trimble has acknowledged, in

many instances, resulted from defects in Trimble's own integration logic, workflow configuration, or backend setup.

38. Reporting. DMR cannot produce a report from either system that clearly shows base contract value versus change order value, or cost and profitability by base contract versus change order, and has no ability to track scope additions, deductions, or internal transfers through the system.

39. Approval workflow. The represented invoice approval workflow can function only if project management personnel are active licensed users within Spectrum itself — a licensing and operational structure inconsistent with the configuration Trimble itself sold and recommended to DMR — rendering the represented workflow internally inconsistent and operationally unworkable as configured and licensed by Trimble.

40. The practical consequence of the foregoing is that DMR's project managers have been compelled to revert to maintaining project financials in spreadsheet workbooks outside the system — precisely the duplicate, off-system workflow that DMR engaged Trimble to eliminate.

**G. Trimble's Subsequent Admissions and Conduct**

41. On January 7, 2026, DMR sent a formal escalation letter to Trimble's senior executive management documenting the integration failures and demanding remediation at Trimble's expense. Trimble acknowledged receipt on January 14, 2026 and assigned its Director of North America Services Sales & Partner Management to the matter.

42. In February 2026, Trimble confirmed that its Solution Architects for both ProjectSight and Spectrum — the senior technical resources appropriate to the engagement from its outset

— were only then beginning a no-cost comprehensive review of DMR's environment, including the integration points themselves.

43. In or about March 2026, Trimble admitted, in a recorded communication preserved by DMR, that DMR was among the first customers attempting to use this product configuration; that the product was not fully ready for the level of integration it was intended to support at the time it was sold to DMR; and that Trimble had made updates and changes to the system without adequately informing or supporting DMR in implementing them.

44. These admissions established, and DMR then first fully understood, that the representations that induced DMR to execute the Agreement in August 2023 were false when made, and that the deficiencies DMR had experienced were not in-process implementation items susceptible of resolution through the parties' continued cooperative efforts, but the consequence of Trimble having sold DMR a product that did not exist as represented.

45. While its own implementation and remediation personnel remained engaged on defects DMR had escalated, Trimble's credit department simultaneously issued a formal suspension notice to DMR for non-payment of consulting invoices — charges Trimble had billed DMR in connection with efforts to make Trimble's own product perform the functions Trimble had already been paid to deliver.

**H. Accrual, Tolling, and Election of Rescission; Unenforceability of the Agreement's Terms**

46. Prior to September 17, 2025, Trimble was continuously performing its obligations under the Agreement; the parties were actively and cooperatively engaged in the ongoing

implementation; Trimble repeatedly assured DMR that all open items would be resolved and that the represented functionality was forthcoming.

47. DMR neither knew, nor in the exercise of reasonable diligence could have known, that the deficiencies it experienced were the product of latent defects in Trimble's product and code, that Trimble had abandoned or deprioritized represented functionality, or that Trimble's inducing representations were false when made.

48. DMR first obtained knowledge of facts indicating latent defect in Trimble's own product and code on or about September 17, 2025; first received Trimble's written admission that represented functionality remained in development on October 23, 2025; and first learned that the product had been sold before it was ready, by Trimble's own admission, in or about March 2026.

49. In addition, and in the alternative, Trimble's continued performance, repeated assurances of resolution, and concealment of the true state of its product induced DMR to forbear from asserting claims, and Trimble is estopped from contending that any claim accrued at any earlier time.

50. Trimble's fraud in the inducement vitiates each and every alleged term of the agreement, including choice of law, choice of venue, or any other term which purport to limit DMR's rights.

51. A contract procured by fraud in the inducement is void or voidable at the election of the defrauded party, and the party that procured the contract by fraud may not enforce any of its terms against the party it defrauded.

52. Because DMR's assent to the Agreement was procured by Trimble's fraudulent misrepresentations and omissions as alleged herein, DMR's assent was vitiated from the

inception, and the Agreement is void or voidable in its entirety. DMR hereby elects, to the fullest extent permitted by law and equity, to avoid and rescind the Agreement and disaffirms each and every one of its terms and conditions.

53. Separately, independently, and in the alternative, each of the foregoing categories of provisions is unenforceable in any event because the Agreement is a contract of adhesion drafted unilaterally by Trimble and presented on a take-it-or-leave-it basis; because such provisions are procedurally and substantively unconscionable as applied to the circumstances alleged herein, including Trimble's knowing sale of a product that was not ready for the represented level of integration; because such provisions fail of their essential purpose; and because their enforcement — in particular, the enforcement of any foreign choice-of-law provision or any shortened contractual limitations period to defeat the claims of a New Jersey plaintiff defrauded in New Jersey — would be contrary to the public policy of the State of New Jersey, including the policies embodied in the New Jersey Consumer Fraud Act.

54. New Jersey substantive law governs all claims asserted herein, and the limitations periods established by New Jersey statute apply.

**FIRST COUNT**

**(Fraud in the Inducement / Fraudulent Misrepresentation)**

55. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

56. In the course of soliciting DMR's business in 2023 — including in Trimble's sales presentations and communications to DMR's principals, in the Business Process Review process that Trimble itself required, and in the sales and implementation documentation

culminating in the August 4, 2023 Order and SOW — and thereafter in the course of the implementation and at each renewal, Trimble made the representations of material fact set forth in Paragraph "8" above, including that ProjectSight and Spectrum were natively and fully integrated; that the represented change order, billing, purchase order, commitment-accounting, schedule-of-values, approval-routing, and reporting functionality existed and would operate; and that the system would eliminate DMR's duplicate-entry workflows.

57. Those representations were false when made. As Trimble has since admitted, the product was not fully ready for the level of integration it was intended to support at the time it was sold to DMR; DMR was among the first customers on which the configuration was attempted; certain represented functionality was, years later, still in Trimble development; and Trimble changed development direction and abandoned or deprioritized represented functionality without ever disclosing that fact to DMR.

58. As the developer and vendor of its own products, Trimble knew, or was recklessly indifferent to, the falsity of its representations when made, and made them with the intent that DMR rely upon them in purchasing the platform, abandoning its incumbent systems, executing the Agreement, renewing its subscriptions, and continuing to pay implementation and consulting fees.

59. Trimble further fraudulently concealed material facts it was obligated to disclose — including the product's lack of readiness, DMR's status among the first customers on the configuration, and Trimble's abandonment of represented functionality — while continuing to accept DMR's payments and to assure DMR that the represented functionality was forthcoming.

60. DMR reasonably relied upon Trimble's representations and non-disclosures, to its detriment. DMR did not discover, and could not reasonably have discovered, the falsity of the representations until, at the earliest, the events of September and October 2025, and did not learn the full truth until Trimble's admissions of 2026.

61. In the alternative, and without regard to Trimble's knowledge or state of mind, Trimble's material misrepresentations upon which DMR relied constitute equitable fraud, entitling DMR to rescission and other equitable relief.

62. Trimble's fraud in the inducement vitiates the Agreement in its entirety, together with each and every one of its terms and conditions for the reasons set forth in paragraphs 50 through 54 above. DMR is entitled to rescission of the Agreement, restitution of all amounts paid thereunder, and a judicial declaration that the Agreement and all of its terms and conditions are void and unenforceable against DMR.

63. As a direct and proximate result of Trimble's fraud, DMR has suffered damages as set forth herein, and is further entitled to punitive damages by reason of Trimble's wanton, willful, and egregious conduct.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Rescission of the Agreement, and a judgment declaring that the Agreement and each and every one of its terms and conditions are void and unenforceable against DMR, specifically including any choice-of-law or governing-law provision and any contractual limitation-of-suit provision or other provision purporting to shorten any applicable statute of limitations;

b. Restitution of all amounts paid by DMR to Trimble, and rescissory damages;

c. Compensatory damages;

d. Consequential and incidental damages;

e. Punitive damages;

f. Pre-judgment and post-judgment interest;

g. Attorneys' fees and costs of suit to the extent recoverable; and

h. Such other and further relief as the Court deems equitable and just.

**SECOND COUNT**

**(Declaratory Judgment — N.J.S.A. 2A:16-50 et seq. — That the Agreement and All of Its Terms and Conditions Are Void and Unenforceable)**

64. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

65. An actual, justiciable controversy exists between DMR and Trimble concerning the validity and enforceability of the Agreement and of its terms and conditions, including whether any choice-of-law provision, contractual limitations period, warranty disclaimer, limitation of liability, damages exclusion, acceptance or close-out provision, or integration, merger, or no-reliance clause contained in or incorporated into the Agreement may be enforced against DMR.

66. DMR is entitled to a declaratory judgment, pursuant to N.J.S.A. 2A:16-50 et seq. and R. 4:42-3, that: (a) the Agreement was procured by Trimble's fraud in the inducement and is void or voidable, and is rescinded, in its entirety; (b) no term or condition of the Agreement is enforceable against DMR; (c) specifically, any choice-of-law or governing-law provision of the Agreement is void and unenforceable, and New Jersey substantive law governs all claims and defenses in this action; (d) specifically, any contractual limitation-of-suit provision or other provision purporting to shorten any statute of limitations is void and unenforceable, the limitations periods established by New Jersey statute govern all

claims asserted herein, and no claim asserted herein is time-barred; (e) any disclaimer or limitation of warranties, limitation of liability, damages cap, or exclusion of consequential, incidental, or punitive damages is void and unenforceable; and (f) no integration, merger, or purported no-reliance clause bars any claim asserted herein.

67. A declaration of the foregoing will resolve a substantial and presently existing controversy between the parties and will settle the legal relations at issue.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. A declaratory judgment as set forth in this Count, including specifically that any choice-of-law provision and any contractual limitations provision of the Agreement are void and unenforceable and that New Jersey law and New Jersey statutory limitations periods govern;

b. Pre-judgment and post-judgment interest;

c. Attorneys' fees and costs of suit to the extent recoverable; and

d. Such other and further relief as the Court deems equitable and just.

**THIRD COUNT**

**(New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.)**

68. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

69. The sale of the ProjectSight/Spectrum/AppXchange platform and associated implementation and consulting services to DMR constitutes the sale of merchandise within the meaning of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq. (the "CFA"), and DMR is a person entitled to the protections of the CFA.

70. Trimble engaged in unlawful practices within the meaning of N.J.S.A. 56:8-2, including affirmative misrepresentations of material fact concerning the existence, readiness, and functionality of the integrated system, and knowing omissions and concealment of material facts — including the product's lack of readiness, DMR's status among the first customers on the configuration, and Trimble's abandonment of represented functionality — with the intent that DMR rely thereon, in connection with the sale and subsequent servicing and renewal of the merchandise.

71. Trimble's unlawful practices were employed to procure the very Agreement whose terms Trimble may seek to invoke in its defense. No provision of the Agreement may operate to limit, shorten, waive, or abrogate DMR's rights and remedies under the CFA, which as a matter of New Jersey law and public policy may not be contracted away.

72. As a direct and proximate result of Trimble's unlawful practices, DMR suffered ascertainable losses of money and property, including amounts paid to Trimble, third-party consulting fees, and the quantifiable costs of duplicate record-keeping and manual reconciliation. DMR is entitled under N.J.S.A. 56:8-19 to threefold its ascertainable losses, together with reasonable attorneys' fees, filing fees, and costs of suit.

**WHEREFORE,** Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Ascertainable losses, trebled pursuant to N.J.S.A. 56:8-19;

b. Reasonable attorneys' fees, filing fees, and costs of suit;

c. Pre-judgment and post-judgment interest; and

d. Such other and further relief as the Court deems equitable and just.

## FOURTH COUNT

**(Negligent Misrepresentation — In the Alternative)**

73. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

74. In the alternative, Trimble negligently made the false representations of material fact set forth above, without reasonable grounds for believing them to be true, in circumstances in which Trimble knew or should have known that DMR would rely upon them.

75. DMR justifiably relied upon those representations to its detriment and, as a direct and proximate result, has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

## FIFTH COUNT

**(Breach of Contract — In the Alternative)**

76. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

77. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void, the Order and the SOW, together with the terms incorporated therein, constitute a valid and binding contract between DMR and Trimble, under which

Trimble was obligated, among other things, to implement, configure, train, test, take live, and optimize an integrated ProjectSight/Spectrum/AppXchange system conforming to the Agreement, exercising Trimble's expertise in its own products.

78. DMR performed its obligations under the Agreement, including payment of the contract price, subscription renewals, and additional consulting fees, and the devotion of substantial personnel and resources to the implementation, except to the extent performance was excused, prevented, or rendered futile by Trimble's conduct.

79. Trimble materially breached the Agreement by, among other things: failing to deliver a functioning integrated system conforming to the Agreement; falsely representing on October 13, 2025 that the implementation was complete and error-free and demanding execution of a close-out document on that false premise; failing and refusing thereafter to remediate the latent defects in its product, code, and configuration; and failing to complete go-live and close-out as contemplated by the SOW.

80. In the event Trimble invokes any term of the Agreement in defense of this Count, each such term is void and unenforceable for the reasons set forth in paragraphs 50 through 54 above.

81. As a direct and proximate result of Trimble's breaches, DMR has suffered damages including, without limitation, amounts paid to Trimble, third-party consulting fees, internal labor and opportunity costs associated with manual reconciliation and duplicate record-keeping across its entities and projects, and cover and mitigation costs.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable by contract, statute, or equity; and

e. Such other and further relief as the Court deems equitable and just.

**SIXTH COUNT**

**(Breach of the Implied Covenant of Good Faith and Fair Dealing — In the Alternative)**

82. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

83. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: every contract governed by New Jersey law contains an implied covenant of good faith and fair dealing, obligating each party to refrain from conduct that destroys or injures the other party's right to receive the fruits of the contract.

84. Trimble breached the implied covenant by, among other things: withholding from DMR, throughout the implementation period and at each renewal, that the product was not ready for the represented level of integration and that Trimble had changed development direction and abandoned or deprioritized represented functionality; continuing to accept subscription renewals and to bill consulting fees for remediation of its own product's defects while withholding that information; demanding on false premises that DMR execute a close-out acknowledging full delivery; and pursuing collections and credit-suspension measures against DMR for fees incurred in attempting to make Trimble's own product perform as sold.

85. As a direct and proximate result, DMR has been deprived of the fruits of the Agreement and has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**SEVENTH COUNT**

**(Breach of Express Warranty — In the Alternative)**

86. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

87. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: Trimble's affirmations of fact and promises concerning the ProjectSight/Spectrum/AppXchange system — including that the platforms were natively integrated; that duplicate entry would be eliminated; that change order, purchase order, AIA billing, schedule-of-values, approval-routing, and reporting workflows would function as described; and that system-generated financial information could be relied upon as accurate — related to the goods and services sold and became part of the basis of the bargain, creating express warranties.

88. The system as delivered does not conform to those affirmations and promises, and Trimble has thereby breached its express warranties.

89. DMR notified Trimble of the non-conformities within a reasonable time after discovering them, including in writing on October 23, 2025 and January 7, 2026.

90. As a direct and proximate result, DMR has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**<u>EIGHTH COUNT</u>**

**(Breach of Implied Warranties — In the Alternative)**

91. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

92. Solely in the alternative, and only in the event and to the extent the Agreement is not rescinded or declared void: at the time of contracting, Trimble knew the particular purpose for which DMR required the system — an integrated replacement for Procore and QuickBooks that would eliminate duplicate entry and provide a single, reliable source of project and financial information — and knew that DMR was relying on Trimble's skill and judgment to select, furnish, and implement a suitable system.

93. The system as delivered is not fit for that particular purpose, and is not merchantable as an integrated construction management and accounting platform of the kind Trimble holds

itself out as providing, in breach of the implied warranties of fitness for a particular purpose and merchantability.

94. Any purported disclaimer or limitation of such warranties — and any other term of the Agreement invoked to defeat this Count, including any choice-of-law provision or any contractual limitations period — is void and unenforceable for the reasons set forth in paragraphs 50 through 54 above, and is in any event unenforceable, unconscionable, and/or fails of its essential purpose under the circumstances alleged herein, including Trimble's knowing sale of a product that was not ready for the represented level of integration.

95. As a direct and proximate result, DMR has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Compensatory damages;

b. Consequential and incidental damages;

c. Pre-judgment and post-judgment interest;

d. Attorneys' fees and costs of suit to the extent recoverable; and

e. Such other and further relief as the Court deems equitable and just.

**NINTH COUNT**

**(Unjust Enrichment — In the Alternative)**

96. Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length herein.

97. In the alternative, and including in the event the Agreement is rescinded or declared void or Trimble disputes the scope, applicability, or enforceability of any contractual provision,

Trimble received and retained from DMR subscription fees, professional services fees, and consulting fees for a product and implementation that do not function as represented, under circumstances in which retention of those benefits without payment would be unjust.

98. DMR conferred those benefits with the reasonable expectation of receiving the functioning integrated system Trimble represented, and Trimble's retention of the benefits without delivering that system has unjustly enriched Trimble at DMR's expense.

**WHEREFORE**, Plaintiff DMR Construction Services, Inc. demands judgment against Defendant Trimble Inc. for:

a. Restitution and disgorgement of all amounts by which Trimble has been unjustly enriched;

b. Pre-judgment and post-judgment interest;

c. Costs of suit; and

d. Such other and further relief as the Court deems equitable and just.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable, pursuant to R: 4:35-1.

**DESIGNATION OF TRIAL COUNSEL**

Pursuant to R. 4:25-4, Joseph M. Cerra, Esq. is hereby designated as trial counsel on behalf of Plaintiff.

**CERTIFICATION PURSUANT TO R. 4:5-1**

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration

proceeding is contemplated by Plaintiff, and that I am not aware at this time of any other party who should be joined in this action.

**CERTIFICATION PURSUANT TO R. 1:38-7(c)**

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

**LYNCH LAW FIRM, P.C.**
*Attorneys for Plaintiff*

By: /s/ Joseph M. Cerra
Joseph M. Cerra, Esq.

Dated: July 31, 2026

# Civil Case Information Statement

**Case Details: BERGEN | Civil Part Docket# L-007357-26**

**Case Caption:** DMR CONSTRUCTION SER VICES, IN VS TRIMBLE, INC.
**Case Initiation Date:** 07/31/2026
**Attorney Name:** JOSEPH MICHAEL CERRA
**Firm Name:** LYNCH LAW FIRM, PC
**Address:** 440 STATE ROUTE 17 NORTH HASBROUCK HEIGHTS NJ 07604
**Phone:** 2012882022
**Name of Party:** PLAINTIFF : DMR CONSTRUCTION SERVICES, INC
**Name of Defendant's Primary Insurance Company (if known):** None

**Case Type:** COMPLEX COMMERCIAL
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO
**Does this case involve claims related to COVID-19? NO**

**Are sexual abuse claims alleged by: DMR CONSTRUCTION SERVICES, INC? NO**

**THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE**
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** YES

**If yes, is that relationship:** Business

**Does the statute governing this case provide for payment of fees by the losing party?** YES

**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**

**Do you or your client need any disability accommodations?** NO
**If yes, please identify the requested accommodation:**

**Will an interpreter be needed?** NO
**If yes, for what language:**

**Please check off each applicable category: Putative Class Action?** NO **Title 59?** NO **Consumer Fraud?** YES **Medical Debt Claim?** NO

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/31/2026
Dated

/s/ JOSEPH MICHAEL CERRA
Signed

BERGEN COUNTY COURTHOUSE
SUPERIOR COURT LAW DIV
BERGEN COUNTY JUSTICE CTR RM 415
HACKENSACK NJ 07601-7680

TRACK ASSIGNMENT NOTICE

COURT TELEPHONE NO. (201) 221-0700
COURT HOURS 8:30 AM - 4:30 PM

DATE: JULY 31, 2026
RE: DMR CONSTRUCTION SER VICES, IN VS TRIMBLE, INC.
DOCKET: BER L -007357 26

THE ABOVE CASE HAS BEEN ASSIGNED TO: TRACK 4.

DISCOVERY IS PRESUMPTIVELY 450 DAYS BUT MAY BE ENLARGED OR SHORTENED BY THE JUDGE AND RUNS FROM THE FIRST ANSWER OR 90 DAYS FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.
FROM SERVICE ON THE FIRST DEFENDANT, WHICHEVER COMES FIRST.

THE MANAGING JUDGE ASSIGNED IS: HON DAVID V. NASTA

IF YOU HAVE ANY QUESTIONS, CONTACT TEAM 001
AT: (201) 221-0700 EXT 25645.

IF YOU BELIEVE THAT THE TRACK IS INAPPROPRIATE YOU MUST FILE A CERTIFICATION OF GOOD CAUSE WITHIN 30 DAYS OF THE FILING OF YOUR PLEADING.
PLAINTIFF MUST SERVE COPIES OF THIS FORM ON ALL OTHER PARTIES IN ACCORDANCE WITH R.4:5A-2.

ATTENTION:

ATT: JOSEPH M. CERRA
LYNCH LAW FIRM, PC
440 STATE ROUTE 17 NORTH
HASBROUCK HEIGHT NJ 07604

ECOURTS